**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT COURT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
F I L E D

**OCT 1 7 2022**

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| **L.F.R. CARLI & CIA, LTDA.** | § | |
| | § | |
| *Plaintiff,* | § | **CASE NO.** |
| | § | |
| *v.* | § | |
| | § | |
| **PACIFIC LUMBER RESOURCES, INC.;** | § | |
| **CARGOWAYS WAREHOUSING &** | § | |
| **TRUCKING COMPANY INC.; SUPPLY** | § | |
| **CHAIN MANAGEMENT, LLC; and** | § | |
| **CARIBBEAN TRADING ENTERPRISES,** | § | |
| **INC., d/b/a OMNI TRANSLOADING AND** | § | |
| **LOGISTICS** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## COMPLAINT

COMES NOW, Plaintiff L.F.R. CARLI & CIA, LTDA. (hereinafter "Plaintiff" or "Carli"), by and through its undersigned counsel and sues Defendants PACIFIC LUMBER RESOURCES, INC. ("Pacific Lumber"), CARGOWAYS WAREHOUSING & TRUCKING COMPANY INC. ("Cargoways"), SUPPLY CHAIN MANAGEMENT, LLC ("SCM"), and CARIBBEAN TRADING ENTERPRISES, INC. d/b/a OMNI TRANSLOADING AND LOGISTICS ("OMNI") (collectively the "Defendants") and alleges:

## NATURE OF ACTION

1.      This is an action for monetary damages, in addition to declaratory and injunctive relief, arising from a breach of contract, conversion, and fraud.

1

## THE PARTIES, JURISDICTION, AND VENUE

2.     Plaintiff L.F.R. Carli & Cia, Ltda., is a limited liability company duly organized and existing under the laws of Brazil with its principal place of business located at Rua Antonio Gaudi, 901 CDI, Guarapuava - PR, CEP: 85063-440, Brazil. Carli's members are all residents of the foreign state of Brazil.

3.     Defendant Pacific Lumber Resources, Inc. is a corporation duly organized and existing under the laws of the state of Oregon with its principal place of business located at 1159 McVey Avenue, Lake Oswego, OR 97034.

4.     Defendant Cargoways Warehousing & Trucking Co., Inc. ("Cargoways"), is a corporation duly organized and existing under the laws of the state of Texas with its principal place of business located at 555 Gellhorn Drive, Houston, TX 77029.

5.     Defendant Supply Chain Management, LLC ("SCM") is a limited liability company organized and existing under the laws of the state of Georgia with its principal place of business located at 437 Telfair Road, Garden City, GA 31415. Upon information and belief, SCM's members are all residents of the state of Georgia.

6.     Defendant Caribbean Trading Enterprises, Inc. d/b/a OMNI Transloading and Logistics ("OMNI") is a corporation duly organized and existing under the laws of the state of Florida with its principal place of business located at 11701 NW 100th Rd, Suite 2, Medley, FL 33178.

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and/or 1332(a)(2) as the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs, and the parties are citizens of different states.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district and a substantial part of property that is the subject of the instant suit is presently situated in this judicial district.

## GENERAL ALLEGATIONS

9.     In early 2022, Defendant Pacific Lumber approached Plaintiff to initiate discussions regarding a potential distribution agreement.

10.     Beginning in or around January 2022, Defendant Pacific Lumber entered into an agreement with Plaintiff to import and distribute Plaintiff's merchandise in the United States for valuable consideration (the "Agreement").

11.     Among other things, as part of this Agreement, Plaintiff agreed to ship its Brazilian pine plywood products ("the merchandise") to Pacific Lumber. Pacific Lumber agreed to pay the initial costs of importation, including international freight, customs duties, customs clearance, drayage to the warehouse, and warehousing (collectively termed the "import and freight costs"), and then pay Plaintiff once Pacific Lumber sold the merchandise.

12.     Plaintiff and Pacific Lumber further agreed that upon the sale of the merchandise to customers in the United States, Pacific Lumber would keep 8% of the total gross revenue from the sale. Pacific Lumber would also keep an amount equal to the total of import and freight costs plus the cost of domestic trucking freight from the warehouse to its customers (the "dispatch freight cost"), which it would pay out of pocket in advance. Pacific Lumber would then promptly remit to Plaintiff the remaining proceeds. Therefore, the payment to Plaintiff comprised the actual cost of the merchandise and a portion of profit from its sale.

13.     Between January 25, 2022 to May 27, 2022, Plaintiff shipped an estimated 121 containers containing a total of 165,606 sheets of merchandise to Pacific Lumber in the United States. A summary of the shipments is attached as **Exhibit 1**.

14.     For each shipment, Defendant Pacific Lumber placed an order with the Plaintiff, and Plaintiff issued a commercial invoice. The invoice value is an estimated price for Customs purposes. Pacific Lumber contracted Greatway Logistics Group, LLC ("Greatway") to arrange ocean transportation and customs clearance. The purchase orders, commercial invoices, freight invoices, delivery orders, and customs forms for each shipment are attached as **Exhibit 2**. Greatway's breakdown of charges is attached as **Exhibit 3**.[1]

15.     Pacific Lumber received the merchandise at various U.S. ports after it cleared Customs and arranged with Cargoways, SCM, and OMNI (collectively the "warehouse Defendants") to store the cargo at their warehouses. Pacific Lumber then arranged for the merchandise to be transported from the port to the warehouse Defendants' facilities for storage.

16.     Pacific Lumber stored the 149,337 sheets of merchandise that entered the United States through the port of Houston at Defendant Cargoways's warehouse located at 555 Gellhorn Drive, Houston, TX 77029. Cargoways continues to store part of the merchandise.

17.     Pacific Lumber stored the 4,104 sheets of merchandise that entered the United States through the port of Savannah at Defendant SCM's warehouse located at 500A Morgan Lakes Industrial Blvd, Savannah, GA 31407. SCM continues to store part of the merchandise.

---

[1] PO numbers B23710, B23720, B23730, B27340, B23750, B24400, and B23760-A are not on this table because Greatway only assisted with duties and local charges, not ocean freight.

18.    Pacific Lumber stored the 12,165 sheets of merchandise that entered the United States through the port of Port Everglades at Defendant OMNI's warehouse located at 2335 NW 107th Avenue, Suite 2B, Bay 43-50; Suite 1C Bay 13-20, Doral, FL 33172. OMNI continues to store part of the merchandise.

19.    As of June 17, 2022, Pacific Lumber has allegedly made fifteen (15) sales of a total 15,984 sheets of the merchandise for an alleged total gross sales revenue of $528,014.40 (the "reported sales"). A summary of the reported sales and payments is submitted as **Exhibit 4**, proof of payment is attached as **Exhibit 5**.

20.    Additionally, as of June 17, 2022, Pacific Lumber continued to hold approximately 149,622 sheets of Plaintiff's merchandise at the warehouse Defendants' premises and/or elsewhere. Plaintiff has yet to receive any payment for those 149,622 sheets which are either currently held by Pacific Lumber at the warehouse Defendants' facilities or have been sold with no notice nor payment to Plaintiff.

21.    Since June 17, 2022, the date of the last wire transfer received by Plaintiff from Defendant Pacific Lumber, Plaintiff has neither received any payments from Pacific Lumber nor any information regarding sales of the merchandise.

22.    Upon information and belief, Defendant Pacific Lumber has completed over twenty (20) sales of Plaintiff's merchandise without reporting such sales to Plaintiff (the "unreported sales"). A list of these sales is attached as **Exhibit 6**. Pacific Lumber has likewise not remitted any payment for these sales that took place after June 17, 2022.

23.    Plaintiff has performed all of its obligations under the Agreement.

24.     Defendant Pacific Lumber has breached the Agreement by failing and neglecting to remit payment to Plaintiff for the unreported sales that took place around or after June 17, 2022, of Plaintiff's merchandise.

25.     Plaintiff demanded that Defendant Pacific Lumber fulfill its contractual obligations, but Defendant Pacific Lumber refused to do so.

26.     Moreover, Defendant Pacific Lumber created false motor freight invoices which were submitted to Plaintiff to misrepresent trucking costs in a scheme to withhold monies rightfully owed to Plaintiff.

27.     When Pacific Lumber received an order for the merchandise from its customer, it contracted a trucking company to transport the merchandise from the warehouse where the purchased merchandise was held in storage to the customer's designated place of delivery. Pacific Lumber submitted the trucking company's invoices to the Plaintiff and deducted the dispatch freight costs from the sales proceeds remitted to Plaintiff. The true and fake freight invoices are attached as **Exhibit 7**.

28.     Because Plaintiff consigned the merchandise to Defendant Pacific Lumber for distribution in the United States and because Defendant Pacific Lumber has not paid for the merchandise, title to the merchandise has not passed to Defendant Pacific Lumber. As such, Plaintiff is, and was at all times relevant hereto, the rightful owner of the merchandise.

29.     Due to Defendant Pacific Lumber's material breach of the distribution agreement, Plaintiff has terminated the agreement and demanded Pacific Lumber deliver its merchandise to Plaintiff's designated warehouse or relinquish the possession and/or control of the merchandise

to the Plaintiff. Plaintiff has further demanded Defendants Cargoways, SCM, and OMNI to only follow Plaintiff's dispatch instruction.

30.     Defendants have refused to comply with Plaintiff's demands.

31.     Defendants have wrongfully exercised dominion and control over Plaintiff's property to the exclusion of the Plaintiff.

32.     All conditions precedent to bringing this action have been performed or have occurred as required under Tex. R. Civ. P. 54 and Fed. R. Civ. P. 9(c).

## COUNT I
### (Breach of express contract against Pacific Lumber)

33.     Plaintiff realleges and incorporates the allegations in paragraphs 1-32 as if fully set forth herein.

34.     The Agreement between Plaintiff and Pacific Lumber is a valid, enforceable contract.

35.     Plaintiff fulfilled its obligations under the Agreement by shipping the merchandise to Pacific Lumber.

36.     Pacific Lumber received and accepted the merchandise.

37.     Pacific Lumber materially breached its obligations under the Agreement by failing to remit payment in accordance with the terms of the Agreement for the sale of the merchandise.

38.     Upon information and belief, Pacific Lumber has completed over twenty (20) unreported sales of Plaintiff's merchandise since Plaintiff for which Plaintiff has not received payment.

39.     Plaintiff has demanded payment from Pacific Lumber. Pacific Lumber refused and continues to refuse to pay Plaintiff pursuant to the terms of the Agreement.

40.     As a result of Pacific Lumber's failure to remit payment for the unreported sales, Plaintiff has been damaged in an amount unknown at this time and to be determined at trial, but, in any event, not less than $340,000.00.

41.     Pacific Lumber also breached its obligations under the Agreement by creating and submitting false trucking invoices to Plaintiff which misrepresented the actual costs Pacific Lumber incurred for the reported sales.

42.     By misrepresenting the trucking costs on the fifteen (15) reported sales completed by June 17, 2022, Pacific Lumber withheld at least $19,000.00 contractually owed to Plaintiff under the terms of the Agreement.

43.     As a result of Pacific Lumber's breach of the Agreement, Plaintiff has been damaged in an amount to be shown at trial, but in any event not less than $359,000.00, exclusive of interest, fees, and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Pacific Lumber for damages in an amount to be shown at trial, but in any event not less than $359,000.00, in addition to pre-judgment interest, attorney's fees, costs, and any such further relief the Court may deem just and proper.

## COUNT II
### (Breach of implied contract against Pacific Lumber)

44.     Plaintiff realleges and incorporates the allegations in paragraphs 1-32 as if fully set forth herein.

45.     In the alternative to Count I, Plaintiff alleges that Plaintiff and Defendant Pacific Lumber's conduct, course of dealing and/or course of performance clearly show they mutually assented to the implied Agreement.

46.     Notably, Pacific Lumber sent purchase orders and Carli sent invoices. Plaintiff shipped its merchandise to Pacific Lumber, and Pacific Lumber paid the import and freight costs and received the merchandise.

47.     Pacific Lumber proceeded to sell at least 15,984 sheets of the merchandise. For fifteen (15) reported sales of the merchandise, Carli received five (5) wire transfers. For sales under Pacific Lumber customer reference nos. 64640, 64641, 64642, 64643, and 64644, Plaintiff received payment on April 1, 2022, in the amount of $167,629.48. For a sale under Pacific Lumber customer reference no. 64861, Plaintiff received payment on May 09, 2022, in the amount of $16,307.49. For sales under Pacific Lumber customer reference nos. 64801, 64862, and 64916, Plaintiff received payment on May 20, 2022, in the amount of $52,031.74. For sales under Pacific Lumber customer reference nos. 64653, 64917, 64654, 65051, and 65188, Plaintiff received payment on June 10, 2022, in the amount of $83,690.50. For a sale under Pacific Lumber customer reference no. 65106, Plaintiff received payment on June 17, 2022, in the amount of $15,004.04. Pacific Lumber alleged these payments represented the gross sales

revenue minus the import and freight costs, the dispatch freight cost, and Pacific Lumber's 8% share of the proceeds from the completed sales.

48.     Upon information and belief, Pacific Lumber has made over twenty (20) more unreported sales of Plaintiff's merchandise since June 17, 2022, but Plaintiff has not received any documentation of any sales made after this date, nor has it received payment for any further sales.

49.     Pacific Lumber materially breached its obligations under the Agreement by failing to make payment in accordance with the implied terms of the Agreement, evidenced by the parties' conduct, the course of dealing and/or course of performance between Pacific Lumber and Plaintiff, for the sale of the merchandise.

50.     Plaintiff has demanded payment from Pacific Lumber. Pacific Lumber refused and continues to refuse to pay Plaintiff pursuant to the terms of the Agreement.

51.     As a result of Pacific Lumber's failure to remit payment for the unreported sales, Plaintiff has been damaged in an amount unknown at this time and to be determined at trial, but, in any event, not less than $340,000.00.

52.     Pacific Lumber also breached its obligations under the Agreement by creating and submitting false trucking invoices to Plaintiff which overrepresented the actual costs Pacific Lumber incurred for the reported sales.

53.     By misrepresenting the trucking costs on the fifteen (15) reported sales completed by June 17, 2022, Pacific Lumber withheld at least $19,000.00 contractually owed to Plaintiff under the terms of the Agreement.

54.     Plaintiff has demanded payment from Pacific Lumber. Pacific Lumber refused and continues to refuse to pay Plaintiff pursuant to the terms of the Agreement.

55.     As a result of Pacific Lumber's breach of the Agreement, Plaintiff has been damaged in an amount to be shown at trial, but in any event not less than $359,000.00, exclusive of interest, fees, and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Pacific Lumber for damages in an amount to be shown at trial, but in any event not less than $359,000.00, in addition to pre-judgment interest, attorney's fees, costs, and any such further relief the Court may deem just and proper.

### COUNT III
### (Unjust enrichment against Pacific Lumber)

56.     Plaintiff realleges and incorporates the allegations in paragraphs 1-32 as if fully set forth herein.

57.     In the alternative to Counts I and II, Plaintiff alleges that Pacific Lumber has been unjustly enriched by the receipt of benefits from Plaintiff.

58.     Plaintiff shipped valuable merchandise to Pacific Lumber. Pacific Lumber received and accepted the merchandise. As of the date of filing, the merchandise has either been sold or remains in inventory at the warehouse Defendants' warehouses.

59.     Pacific Lumber has obtained a benefit in an amount not yet known and to be determined at trial, but, in any event, not less than $406,000.00 from Plaintiff by taking undue

advantage of its position as Plaintiff's distributor and unjustly retaining the sales revenue from the unreported sales of Plaintiff's merchandise.

60.    Pacific Lumber has further obtained a benefit estimated at $19,000.00 from Plaintiff by fraudulently inflating the trucking costs associated with the reported sales of Plaintiff's merchandise in order to withhold payment rightfully owed to Plaintiff.

61.    Pacific Lumber will further obtain a benefit in an amount equal to the fair market value of the unsold merchandise, which will be determined at trial, but not less than $3.6 million[2] minus the applicable prepaid import and freight costs, if this Court does not order the unsold merchandise be returned to Plaintiff.

62.    Pacific Lumber knew or should have known that Plaintiff expected to receive fair payment for the merchandise. No one in sound mind would ship millions of dollars worth of merchandise to a business in another country without expecting payment.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Pacific Lumber for damages in an amount to be shown at trial, but, in any event, not less than $4.025 million, in addition to pre-judgment interest, attorney's fees, costs, and any such further relief the Court may deem just and proper.

## COUNT IV
### (Fraud against Pacific Lumber)

63.    Plaintiff realleges and incorporates the allegations in paragraphs 1-32 as if fully set forth herein.

---

[2] This amount was reached using Random Lengths Weekly Report, vol. 78, issue 24. Attached as Exhibit 8.

64.     On at least six occasions, Pacific Lumber submitted a false trucking invoice to Plaintiff. The invoices were submitted via email by John Hans, Pacific Lumber's CFO.

65.     Invoice no. 12078, dated April 1, 2022, was for trucking for a sale identified by Pacific Lumber's customer reference no. 64640 and allegedly issued by TDA Logistics, Inc., to Pacific Lumber. The invoice shows a total of $4,200.00, which misrepresents the actual cost of trucking paid by Pacific Lumber.

66.     Plaintiff has obtained a Pacific Lumber cargo release/delivery order dated March 14, 2022, issued to Nolan Transportation Group for trucking services for the same customer reference number (64640) identified in invoice no. 12078. The cargo release/delivery order shows a rate of $3,000.00.

67.     Invoice no. 12080, dated April 1, 2022, was for trucking for a sale identified by Pacific Lumber's customer reference no. 64641 and allegedly issued by TDA Logistics, Inc., to Pacific Lumber. The invoice shows a total of $4,200.00, which misrepresents the actual cost of trucking paid by Pacific Lumber.

68.     Plaintiff has obtained a Pacific Lumber truck confirmation dated March 17, 2022, issued to Talladega Transportation for trucking services for the same customer reference number (64641) identified in invoice no. 12080. The truck confirmation shows a rate of $3,000.00

69.     Invoice no. 12081, dated April 1, 2022, was for trucking for a sale identified by Pacific Lumber's customer reference no. 64642 and allegedly issued by TDA Logistics, Inc., to Pacific Lumber. The invoice shows a total of $4,200.00, which misrepresents the actual cost of trucking paid by Pacific Lumber.

70.     Plaintiff has obtained a Pacific Lumber cargo release/delivery order dated March 15, 2022, issued to UACL Logistics for trucking services for the same customer reference number (64642) identified in invoice no. 12081. The cargo release/delivery order shows a rate of $3,000.00.

71.     Invoice no. 12085, dated April 1, 2022, was for trucking for a sale identified by Pacific Lumber's customer reference no. 64643 and allegedly issued by TDA Logistics, Inc., to Pacific Lumber. The invoice shows a total of $4,200.00, which misrepresents the actual cost of trucking paid by Pacific Lumber.

72.     Plaintiff has obtained a Pacific Lumber cargo release/delivery order dated March 16, 2022, issued to WY Carrier, Inc., for trucking services for the same customer reference number (64643) identified in invoice no. 12085. The cargo release/delivery order shows a rate of $3,000.00.

73.     Invoice no. 12086, dated April 1, 2022, was for trucking for a sale identified by Pacific Lumber's customer reference no. 64644 and allegedly issued by TDA Logistics, Inc., to Pacific Lumber. The invoice shows a total of $4,200.00, which misrepresents the actual cost of trucking paid by Pacific Lumber.

74.     Plaintiff has obtained a Pacific Lumber cargo release/delivery order dated March 16, 2022, issued to Shoulars Trucking for trucking services for the same customer reference number (64644) identified in invoice no. 12086. The cargo release/delivery order shows a rate of $3,000.00.

75.     Invoice no. 12158, dated April 27, 2022, was for trucking for a sale identified by Pacific Lumber's customer reference no. 64861 and allegedly issued by TDA Logistics, Inc., to

Pacific Lumber. The invoice shows a total of $4,400.00, which misrepresents the actual cost of trucking paid by Pacific Lumber.

76.     Plaintiff has obtained a Pacific Lumber truck confirmation dated April 18, 2022, issued to Shipping Connections, Inc. for trucking services for the same customer reference number (64861) identified in invoice no. 12158. The trucking confirmation shows a rate of $3,000.00.

77.     Pacific Lumber knew the invoices it submitted to Plaintiff were false and misrepresented the trucking costs incurred, but submitted them to withhold money rightfully owed to Plaintiff without Plaintiff's knowledge or protest.

78.     In reliance of the false invoices, Plaintiff did not question the amount remitted by Pacific Lumber for the sales of its merchandise and thereby suffered economic loss.

79.     Upon information and belief, Pacific Lumber submitted false invoices for each of the fifteen (15) reported sales.

80.     As a result of Pacific Lumber's fraud, Plaintiff has been damaged in an amount not yet fully known and to be determined at trial, but, in any event, not less than not less than $19,000.00.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment against Pacific Lumber for damages in an amount to be shown at trial, but in any event not less than $19,000.00, in addition to punitive damages, pre-judgment interest, attorney's fees, costs, and any such further relief the Court may deem just and proper.

## COUNT V
### (Conversion against all Defendants)

81.     Plaintiff realleges and incorporates the allegations in paragraphs 1-32 as if fully set forth herein.

82.     Pursuant to the Agreement between Plaintiff and Pacific Lumber, Plaintiff retains all ownership rights to the merchandise until it is sold to a customer.

83.     Pacific Lumber continues to exercise dominion and control over the unsold merchandise that is stored at the warehouse Defendants' premises or other location by continuing to negotiate and sell the merchandise despite Plaintiff's demand for the unsold merchandise to be returned to Plaintiff.

84.     The warehouse Defendants are wrongfully exercising dominion and control over the merchandise by allowing Pacific Lumber to remove it from their warehouses and/or by refusing to heed Plaintiff's instructions regarding the merchandise. The warehouse Defendants have likewise not allowed Plaintiff to retrieve its merchandise from their warehouses.

85.     As a result of Defendants' conversion, Plaintiff has been damaged in an amount not yet known and to be determined at trial, but, in any event, not less than $3.6 million, which corresponds to the estimated fair market value of the unsold merchandise, minus the applicable prepaid import and freight costs.

86.     Also as a direct and proximate result of Defendants' conversion, Plaintiff is deprived of its personal property.

87.     Defendants' acts of conversion were deliberate, willful, and intentional, entitling Plaintiff to punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against all Defendants for the return of the merchandise in Defendants' possession, custody and/or control, in the alternative, damages in an amount to be shown at trial, but not less than the fair market value of the merchandise estimated at $3.6 million minus the applicable prepaid import and freight costs, in addition to punitive damages, pre-judgment interest, attorney's fees, costs, and any such further relief the Court may deem just and proper.

<u>**COUNT VI**</u>
**(Declaratory Judgment against Pacific Lumber)**

88.     Plaintiff realleges and incorporates the allegations in paragraphs 1-32 as if fully set forth herein.

89.     A dispute has arisen between Plaintiff and Defendant Pacific Lumber regarding the Agreement between them and as to the ownership to the goods currently stored at the warehouse Defendants' facilities.

90.     This Court has the power to declare the legal rights and relations between the parties to this action. A declaratory judgment will terminate the controversy between the parties concerning the property rights of the merchandise currently held in Pacific Lumber's inventory at the warehouses operated by the warehouse Defendants.

91.     Plaintiff seeks this Court's declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that:

    a.   Plaintiff has rights under this Agreement;

b.  Defendant Pacific Lumber is in breach of the Agreement;

c.  Plaintiff owns the merchandise stored by the warehouse Defendants and the merchandise currently in Pacific Lumber's possession and/or custody regardless of its physical location, and

d.  Defendant Pacific Lumber must relinquish all rights to the merchandise.

**WHEREFORE**, Plaintiff requests the Court issue a declaratory judgment regarding the parties' rights, duties, interests, and obligations in and to the unsold merchandise, including that Plaintiff is the owner of the merchandise and is entitled to possession, custody, and control of the merchandise.

<u>**COUNT VII**</u>
**(Injunctive Relief against all Defendants)**

92.   Plaintiff realleges and incorporates the allegations in paragraphs 1-32 as if fully set forth herein.

93.   Through its failure to make payment to Plaintiff for the merchandise sold and its misrepresentation of motor freight costs, Defendant Pacific Lumber has breached the terms of the Agreement.

94.   Based on the reported sales, approximately 133,353 sheets of Plaintiff's merchandise remained in Pacific Lumber's possession at a warehouse operated by Defendant Cargoways as of June 17, 2022.

95.   Based on the reported sales, approximately 4,104 sheets of Plaintiff's merchandise remained in Pacific Lumber's possession at a warehouse operated by Defendant SCM as of June 17, 2022.

96.     Based on the reported sales, approximately 12,165 sheets of Plaintiff's merchandise remained in Pacific Lumber's possession at a warehouse operated by Defendant OMNI as of June 17, 2022.

97.     By this Verified Complaint, Motion for Temporary Restraining Order and Preliminary Injunction, and memorandum in support thereof, Plaintiff respectfully requests that the Court restrain and enjoin Pacific Lumber from selling or removing from Plaintiff's merchandise from warehouse without Plaintiff's explicit approval and restrain and enjoin Cargoways, SCM, and OMNI from releasing the merchandise to Pacific Lumber or third parties unless such release is approved by Plaintiff.

98.     If a temporary restraining order is not granted, Plaintiff will suffer substantial irreparable harm. The warehouse Defendants will allow Pacific Lumber to access the merchandise, and Pacific Lumber will continue to unlawfully benefit from the sale of Plaintiff's goods while failing to remit payment for the merchandise to Plaintiff and/or while continuing to submit false invoices to Plaintiff that result in a substantial markup of actual costs incurred with motor carriers.

99.     Due to the substantial value of the merchandise still in Defendants' possession, custody and/or control and the very real threat of non-payment by Pacific Lumber or depreciation of the merchandise, Plaintiff's very existence is threatened in the absence of preliminary relief.

100.     As shown in Plaintiff's Memorandum in Support of a Temporary Restraining Order and Preliminary Injunction, which is incorporated by reference herein, the balance of factors considered in determining whether to grant an injunction demonstrated that the balance

weighs in Plaintiff's favor because: (1) Plaintiff is likely to succeed on the merits;  (2) Plaintiff will be irreparably harmed if the injunction is not granted; (3) Plaintiff's threatened injury outweighs any harm that may result to the non-movants if the injunction is granted; and (4) the injunction serves the public interest.

**WHEREFORE**, Plaintiff respectfully requests that this Court: issue an Order granting Plaintiff a temporary restraining order and enjoining Pacific Lumber from selling or removing from Plaintiff's merchandise from warehouse without Plaintiff's explicit approval and enjoining Cargoways, SCM, and OMNI from releasing the merchandise to Pacific Lumber or third parties unless such release is approved by Plaintiff; issue a preliminary injunction restraining and enjoining Pacific Lumber from selling or removing Plaintiff's merchandise from warehouse without Plaintiff's explicit approval and enjoining Cargoways, SCM, and OMNI from releasing the merchandise to Pacific Lumber or third parties unless such release is approved by Plaintiff; and issue a permanent injunction restraining and enjoining Pacific Lumber from selling or removing Plaintiff's merchandise from warehouse without Plaintiff's explicit approval and enjoining Cargoways, SCM, and OMNI from releasing the merchandise to Pacific Lumber or third parties unless such release is approved by Plaintiff.

Dated: October 11, 2022

Respectfully submitted,

**LIANG + MOONEY, PLLC**
/s/ Shanshan Liang
Shanshan Liang, Esq.
Fla. Bar No. 112991
sliang@customscourt.com
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Tel: (850) 893-0670

Attorney-in-charge
*Pending pro hac vice admission*

*Verification on following page*

## VERIFICATION

I, Luiz Fernando Ribas Carli Filho, declare under penalty of perjury, pursuant to 28 U.S.C. §

1746, as follows:

1.  My name is Luiz Fernando Ribas Carli Filho. I am over the age of eighteen, and I am
    fully competent to make this Declaration.

2.  I am the Vice-President of L.F.R. Carli & Cia, Ltda.

3.  I have reviewed the foregoing Verified Complaint.

4.  I know or believe all allegations that I have personal knowledge of to be true.

5.  I believe the allegations that I do not have personal knowledge of to be true based on
    specified information, documents, or both.

    I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed on October 1, 2022.

Luiz Fernando Ribas Carli Filho
L.F.R. Carli & Cia, Ltda.