IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT COURT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| L.F.R. CARLI & CIA, LTDA. | § § § | |
| *Plaintiff,* | § § | CASE NO. |
| *v.* | § § | |
| PACIFIC LUMBER RESOURCES, INC.; CARGOWAYS WAREHOUSING & TRUCKING COMPANY INC.; SUPPLY CHAIN MANAGEMENT, LLC; and CARIBBEAN TRADING ENTERPRISES, INC., d/b/a OMNI TRANSLOADING AND LOGISTICS | § § § § § § § § | |
| *Defendants.* | § § § | |

United States Courts
Southern District of Texas
FILED
OCT 17 2022
Nathan Ochsner, Clerk of Court

### PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Plaintiff L.F.R. CARLI & CIA, LTDA. ("Carli"), by and through its undersigned counsel, respectfully moves this Court to issue a Temporary Restraining Order and Preliminary Injunction in accordance with Fed. R. Civ. P. 65 against Defendants PACIFIC LUMBER RESOURCES, INC. ("Pacific Lumber"), CARGOWAYS WAREHOUSING & TRUCKING COMPANY INC. ("Cargoways"), SUPPLY CHAIN MANAGEMENT, LLC ("SCM"), and CARIBBEAN TRADING ENTERPRISES, INC. d/b/a OMNI TRANSLOADING AND LOGISTICS ("OMNI") (collectively "Defendants"), and, in support of this Application and Motion, states as follows:

1

## INTRODUCTION

1.  Prior to filing this Application and Motion, Carli has filed a Verified Complaint (ECF no. 1) seeking a temporary restraining order and preliminary and permanent injunctive relief to restrain and enjoin Defendants from selling or otherwise disposing of Plaintiff's Brazilian pine plywood products that are currently believed to be in storage at warehouses operated by Defendants Cargoways, SCM, and OMNI (the "warehouse Defendants") or in Pacific Lumber's possession, custody and/or control elsewhere.

2.  As stated therein, Defendant Pacific Lumber has breached its contract with Plaintiff by failing to remit payment to Plaintiff for sales of the merchandise pursuant to the terms of their agreement and by fraudulently misrepresenting at least the costs of trucking.

3.  Plaintiff has requested the return of the unsold Brazilian pine plywood products (the "unsold merchandise") from Pacific Lumber and warehouse Defendants to no avail.

4.  Under these circumstances, absent the imposition of a Temporary Restraining Order and preliminary injunctive relief order, Plaintiff will continue to suffer irreparable harm to its legitimate interests, including its very existence. Defendants, on the other hand, will not be adversely harmed in any way. Pacific Lumber will merely be restrained and enjoined from selling, moving and/or disposing of the unsold merchandise belonging to Plaintiff unless explicitly authorized to do so by Plaintiff. The warehouse Defendants will merely be restrained and enjoined from allowing Pacific Lumber or third parties to remove Plaintiff's unsold merchandise from their respective warehouses unless such removal is approved by Plaintiff.

5.  Plaintiff has no other adequate remedy at law capable of preventing Defendant Pacific Lumber from holding its unsold merchandise in inventory indefinitely or of preventing the unlawful sale of its unsold merchandise, possibly at lower than market prices, and without

receiving payment. Plaintiff likewise has no other adequate remedy at law capable of preventing the warehouse Defendants from releasing the unsold merchandise to Defendant Pacific Lumber.

6. Plaintiff is substantially likely to succeed on the merits of its claims, and the issuance of injunctive relief will serve the public interest because upholding contracts and enforcing legal remedies for their breach serves the public interest, as does preventing further benefit from fraud and conversion.

7. No bond, or minimal bond, should be required because Pacific Lumber will not suffer any legitimate and measurable damage if it is unable to sell, move, and/or dispose of the merchandise belonging to Plaintiff unless authorized by Plaintiff to do so. Similarly, the warehouse Defendants will not suffer any legitimate and measurable damage if they are unable to allow Pacific Lumber or third parties to remove Plaintiff's unsold merchandise from their respective warehouses unless such removal is approved by Plaintiff. If the Court determines that a bond is necessary, it should not exceed $1,000 for each Defendant.

8. For the foregoing reasons, Plaintiff respectfully requests that this Court grant this Application and Motion and enter a Temporary Restraining Order and Preliminary Injunction containing the following terms:

   a. Defendant Pacific Lumber be restrained and enjoined from selling, moving and/or disposing of Plaintiff's merchandise unless the sale has been explicitly approved by Plaintiff;

   b. The warehouse Defendants, Cargoways, SCM, and OMNI, be restrained and enjoined from removing Plaintiff's unsold merchandise or allowing Plaintiff's unsold merchandise to be removed from warehouse unless such removal has been explicitly approved by Plaintiff;

c. An award of such other relief that this Honorable Court may deem just and proper.

## SUPPORTING MEMORANDUM OF LAW

### I. FACTUAL BACKGROUND

This case involves the knowing, willful, and blatant breach of contractual obligations owed by Defendant Pacific Lumber to its foreign consignor, Plaintiff Carli. Carli is a Brazilian manufacturer of plywood. In early 2022, upon Pacific Lumber's initiative, Pacific Lumber and Carli entered into an agreement under which Carli would ship its Brazilian pine plywood products from Brazil to Pacific Lumber at various ports in the United States, namely Houston, TX, Savannah, GA, and Port Everglades, FL. In exchange for 8% of the gross sales revenue from the merchandise, Pacific Lumber agreed to, *inter alia*, receive, store, and sell the merchandise and remit payment to Carli.

Between January and May 2022, Carli shipped an estimated 121 containers containing a total of 165,606 sheets of merchandise to Pacific Lumber. Pursuant to the agreement, Pacific Lumber shouldered the initial costs of importation, including international freight, customs duties, customs clearance, drayage to the warehouse and storage at the warehouse (collectively termed the "import and freight costs"). Pacific Lumber stored the merchandise at warehouses operated by the warehouse Defendants located in Houston, TX, Savannah, GA, and Doral, FL. Although the merchandise was at Pacific Lumber's disposal for sale to customers, the merchandise remained the property of Carli until purchased by a third party.

As of June 17, 2022, the date Carli received the last wire transfer related to the sales of its merchandise by Pacific Lumber, Pacific Lumber had completed and reported to Carli fifteen (15)

4

sales of 15,984 of sheets total of Carli's merchandise for a total of $528,014.40 in gross sales revenue (the "reported sales"). Under the agreement between Pacific Lumber and Carli, Carli received $334,659.25 from Pacific Lumber. The net amount received by Carli corresponds to the gross sales revenue minus the alleged cost of domestic trucking freight from the warehouse to customers (the "dispatch freight cost"), the import and freight costs, and Pacific Lumber's 8% share of the gross sales revenue.

Upon information and belief, Pacific Lumber has made over twenty (20) further sales of Carli's merchandise that were not reported to Carli and for which Carli has not received any payment (the "unreported sales"). As of June 17, 2022, Carli had not received sales reports or payment for approximately 149,622 sheets of the 165,606 sheets shipped to Pacific Lumber. A summary of the merchandise imported, completed sales, and payments is submitted as **Exhibit A** to the Declaration of Luiz Fernando Ribas Carli Filho (the "Carli Declaration").

In addition to Pacific Lumber's failure to remit payment to Carli for all merchandise sold, Pacific Lumber has fraudulently misrepresented at least the costs associated with trucking for the delivery of sold merchandise on at least six occasions. Carli further believes that this fraud was recurrent and that Pacific Lumber misrepresented the trucking costs for all reported sales to withhold at least $19,000.00.

Because the warehouse Defendants still store Carli's merchandise and allow Pacific Lumber to remove the merchandise from its premises at will and because Pacific Lumber has demonstrated blatant disregard for its contractual obligations and because Carli fears it will suffer substantial irreparable harm if its merchandise remains available to Pacific Lumber, Carli has filed the instant Application for Temporary Restraining Order and Motion for Preliminary Injunction to obtain immediate injunctive relief.

Carli has a legitimate interest in protecting against the loss of its merchandise and monies rightfully owed to it. Accordingly, a temporary restraining order and preliminary injunction should be issued to prevent Carli from incurring further irreparable harm and to prevent Pacific Lumber from continuing to unjustly benefitting from its unlawful conduct with the aid of the warehouse Defendants.

## II. LEGAL ARGUMENTS

### A. LEGAL STANDARD

Preliminary injunctive relief is considered "an extraordinary remedy never awarded as of right." Texas v. United States, 524 F. Supp. 3d 598, 651 (S.D. Tex. 2021) (quoting Benisek v. Lamone, 138 S.Ct. 1942, 1943, 201 L.Ed.2d 398 (2018)). The granting of such injunctive relief is "to be treated as the exception rather than the rule." Texas, 524 F. Supp. 3d at 651 (quoting Miss. Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 621 (5th Cir. 1985)).

When determining whether to issue a temporary restraining order, courts use the same standard used when deciding whether to issue a preliminary injunction. Clark v. Prichard, 812 F.2s 991, 993 (5th Cir. 1987). Under the standard, the moving party is required to show the following: (1) likelihood of success on the merits; (2) irreparable injury; (3) a favorable balance of hardships; and (4) the issuance of such relief will not go against public interest. Opulent Life Church v. City of Holly Springs, Miss., 697 F.3d 279, 288 (5th Cir. 2012). Each of the four requisites must be proven, but there is no predetermined value fixed to the requisites, and courts use a sliding scale to determine how much weight to attribute to each one. See Texas, 524 F. Supp. 3d at 651; Clark, 812 F.2s at 993 ("The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or

preliminary injunction can be granted."); State of Tex. v. Seatrain Int'l, S. A., 518 F.2d 175, 180 (5th Cir. 1975) ("[N]one of the four prerequisites has a fixed quantitative value."); Siff v. State Democratic Exec. Comm., 500 F.2d 1307, 1309 (5th Cir. 1974) ("[A] sliding scale must be applied in considering the probability of plaintiffs' winning on the merits and plaintiffs' irreparable injury in the absence of interlocutory relief.").

## B. REQUISITES FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF

### 1. *LIKELIHOOD OF SUCCESS ON THE MERITS*

Carli's Verified Complaint alleges seven (7) counts for breach of express contract, breach of implied contract, unjust enrichment, fraud, and conversion, in addition to declaratory judgment, injunctive relief, arising from the importation and distribution of Carli's merchandise Pacific Lumber beginning in early 2022. Carli has presented a prima facie case for these claims, which are supported by the substantive law as shown below. Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C., 710 F.3d 579, 582 (5th Cir. 2013) ("To show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment.") See Roho, Inc. v. Marquis, 902 F.2d 356, 358 (5th Cir. 1990) (citation omitted) ("To assess the likelihood of success on the merits, we look to "standards provided by the substantive law.").

#### a) Breach of contract claims (Counts I and II)

In Texas, the four essential elements of a breach of contract action are: " (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."

7

Smith Int'l, Inc. v. Egle Grp., LLC, 490 F.3d 380, 387 (5th Cir. 2007) (quoting Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C., 51 S.W.3d 345, 351 (Tex.App.2001)).

(1) *The existence of a valid contract*

Under Texas law, the elements for a valid contract include: "(1) an offer; (2) acceptance; (3) meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." See R.P. Small Corp. v. Land Dep't, Inc., 505 F. Supp. 3d 681, 697 (S.D. Tex. 2020) (quoting Cessna Aircraft Co. v. Aircraft Network, L.L.C., 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pet. denied). "The elements of written and oral contracts are the same and must be present for a contract to be binding." Thornton v. Dobbs, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011, no pet.).

The oral agreement between Carli and Pacific Lumber constitutes a valid contract. Pacific Lumber approached Carli and offered to pay the import and freight costs and to receive, store, and sell Carli's merchandise in exchange for valid consideration in the form of 8% of the total gross revenue from sales of Carli's merchandise. Carli accepted this offer, as evidenced by its issuance of invoices in Pacific Lumber's name in connection to Pacific Lumber purchase orders and by its shipments of merchandise to Pacific Lumber. Pacific Lumber received and accepted the merchandise and proceeded to sell part of the merchandise. Payment for some of these sales was allegedly remitted pursuant to the terms of the contract, i.e., Pacific Lumber remitted net payments to Carli representing the alleged gross sales revenue minus the import and freight costs and alleged dispatch freight cost and Pacific Lumber's 8% share of the gross sales revenue.

Although Carli alleges the contract was an express contract, it argues in the alternative that Pacific Lumber's conduct, together with its own conduct, evidence a contract implied in fact. See Preston Farm & Ranch Supply, Inc. v. Bio–Zyme Enterprises, 625 S.W.2d 295, 298

8

(Tex.1981) ("An implied-in-fact contract is one whose existence and terms arise from conduct rather than words."); see also Mann Frankfort Stein & Lipp v. Fielding, 289 S.W.3d 844, 850 (Tex. 2009) ("For implied contracts, mutual assent to the terms is implied from the circumstances."). Regardless of whether the contract is express or implied, the parties' conduct, course of dealing, and/or course of performance under the agreement clearly show all elements required for a valid contract.

### *(2) Performance by Carli*

Carli performed its obligations under the contract. Between January and May 2022, Carli shipped an estimated 121 containers containing a total of 165,606 sheets of merchandise to Pacific Lumber in the United States. See Exhibit A to the Carli Declaration.

### *(3) Breach by Pacific Lumber*

Pacific Lumber breached its contract with Carli by failing to remit payment for sales of Carli's merchandise that were not reported to Carli as of June 17, 2022, and for which payment was not made to Carli and by creating and submitting false trucking invoices to Plaintiff which misrepresented the actual costs Pacific Lumber incurred on at least six occasions. See Exhibits B (list of unreported sales and values) and C (trucking invoices) to the Carli Declaration.

As of June 17, 2022, Pacific Lumber had reported sales of 15,984 sheets of Carli's merchandise. The net revenue remitted to Carli[1] for these fifteen (15) sales totaled $334,659.25. Upon information and belief, Pacific Lumber has completed over twenty (20) additional unreported sales which it has neither reported to nor remitted payment for Carli. Pacific

---

[1] Given Pacific Lumber's false representation of the trucking costs, Carli suspects that Pacific Lumber may have likewise misrepresented other information about the sales of the merchandise, including the sales price. Therefore, it is possible that Pacific Lumber failed to remit the full amounts to Carli even for the reported sales for which Carli has received payment.

9

Lumber's failure to remit payment to Carli for merchandise sold is a flagrant breach of its contractual obligations. As a result of Pacific Lumber's breach, Carli has been damaged in an amount estimated at not less than $340,000.00.

Moreover, on at least six occasions, Pacific Lumber deducted dispatch freight cost at a rate inconsistent with the actual trucking costs.

1. Invoice no. 12078, dated April 127, 2022, was for trucking for a sale identified by Pacific Lumber's customer reference no. 64640 and allegedly issued by TDA Logistics, Inc., to Pacific Lumber. The invoice shows a total of $4,200.00, which misrepresents the actual cost of trucking paid by Pacific Lumber. Carli has obtained a Pacific Lumber cargo release/delivery order dated March 14, 2022, which was issued to Nolan Transportation Group for trucking services for the same customer reference number (64640) identified in invoice no. 12078, cited above. The cargo release/delivery order shows a rate of $3,000.00.

2. Invoice no. 12080, dated April 1, 2022, was for trucking for a sale identified by Pacific Lumber's customer reference no. 64641 and allegedly issued by TDA Logistics, Inc., to Pacific Lumber. The invoice shows a total of $4,200.00, which misrepresents the actual cost of trucking paid by Pacific Lumber. Carli has obtained a Pacific Lumber truck confirmation dated March 17, 2022, issued to Talladega Transportation for trucking services for the same customer reference number (64641) identified in invoice no. 12080. The truck confirmation shows a rate of $3,000.00

3. Invoice no. 12081, dated April 1, 2022, was for trucking for a sale identified by Pacific Lumber's customer reference no. 64642 and allegedly issued by TDA Logistics, Inc., to

Pacific Lumber. The invoice shows a total of $4,200.00, which misrepresents the actual cost of trucking paid by Pacific Lumber. Carli has obtained a Pacific Lumber cargo release/delivery order dated March 15, 2022, issued to UACL Logistics for trucking services for the same customer reference number (64642) identified in invoice no. 12081. The cargo release/delivery order shows a rate of $3,000.00.

4. Invoice no. 12085, dated April 1, 2022, was for trucking for a sale identified by Pacific Lumber's customer reference no. 64643 and allegedly issued by TDA Logistics, Inc., to Pacific Lumber. The invoice shows a total of $4,200.00, which misrepresents the actual cost of trucking paid by Pacific Lumber. Carli has obtained a Pacific Lumber cargo release/delivery order dated March 16, 2022, issued to WY Carrier, Inc., for trucking services for the same customer reference number (64643) identified in invoice no. 12085. The cargo release/delivery order shows a rate of $3,000.00.

5. Invoice no. 12086, dated April 1, 2022, was for trucking for a sale identified by Pacific Lumber's customer reference no. 64644 and allegedly issued by TDA Logistics, Inc., to Pacific Lumber. The invoice shows a total of $4,200.00, which misrepresents the actual cost of trucking paid by Pacific Lumber. Carli has obtained a Pacific Lumber cargo release/delivery order dated March 16, 2022, issued to Shoulars Trucking for trucking services for the same customer reference number (64644) identified in invoice no. 12086. The cargo release/delivery order shows a rate of $3,000.00.

6. Invoice no. 12158, dated April 27, 2022, was for trucking for a sale identified by Pacific Lumber's customer reference no. 64861 and allegedly issued by TDA Logistics, Inc., to Pacific Lumber. The invoice shows a total of $4,400.00, which misrepresents the actual

cost of trucking paid by Pacific Lumber. Carli has obtained a Pacific Lumber truck confirmation dated April 18, 2022, issued to Shipping Connections, Inc. for trucking services for the same customer reference number (64861) identified in invoice no. 12158. The trucking confirmation shows a rate of $3,000.00.

These invoices and trucking documents indicate markups of nearly 50%. By deducting higher dispatch freight cost from the sales revenue, Pacific Lumber breached its contractual obligations by inflating the actual costs it incurred with motor freight to withhold money rightfully owed to Carli. Since the cost of trucking is deducted from the net amount remitted to Carli, by inflating the costs to Carli, Pacific Lumber pocketed more money from each sale. This is a breach of Pacific Lumber's contractual obligations as they relate to the terms of payment.

*(4) Damages sustained as a result of Pacific Lumber's breach*

As a result of Pacific Lumber's breaches of contract, Carli has sustained damages in an amount not yet fully known and to be determined at trial, but, in any event, not less than $359,000.00. If Pacific Lumber is found to have misrepresented other costs and/or the sales price, Carli's damages will be even greater.

### b) Unjust enrichment (Count III)

In the alternative to its breach of contract claims, Carli seeks equitable relief for unjust enrichment. Under Texas law, there is a cause of action for unjust enrichment. See Sullivan v. Leor Energy, LLC, 600 F.3d 542, 550 (5th Cir. 2010); see also Savoia-McHugh v. McCrary, No. CV H-20-3387, 2021 WL 4066992, at *7 (S.D. Tex. Sept. 7, 2021) ("[T]he court follows the guidance of the Supreme Court of Texas when applying Texas law, and the Supreme Court of Texas has since adopted the terminology of the Restatement, including the use of the terms

restitution and unjust enrichment to describe the cause of action."); see also Click v. General Motors LLC, No. 2:18-CV-455, 2020 WL 3118577, at *10 (S.D. Tex. Mar. 27, 2020) ("Although some Texas appellate courts do not recognize unjust enrichment as an independent cause of action, the Texas Supreme Court and the Fifth Circuit have recognized unjust enrichment claims.") (internal quotations omitted).

Recovery for unjust enrichment is unavailable when a valid, express contract governs the subject matter of the parties' dispute. Johnson v. Wells Fargo Bank, NA, 999 F. Supp. 2d 919, 929 (N.D. Tex. 2014); see also Coghlan v. Wellcraft Marine Corp., 240 F.3d 449, 454 (5th Cir. 2001) ("In Texas, unjust enrichment is based on quasi-contract and is unavailable when a valid, express contract governing the subject matter of the dispute exists."). However, "there are three exceptions to the general rule: (1) when the validity or terms of the express contract are in dispute; (2) when the defendant committed fraud; and (3) when the plaintiff overpaid." Stevens v. Ford Motor Co., No. 2:18-CV-456, 2020 WL 12573279, at *10 (S.D. Tex. Nov. 2, 2020). In the instant matter, the unjust enrichment claim is pled in the alternative to the breach of contract claims, and Carli also pleads a cause of action for fraud.

To succeed on an unjust enrichment claim, Carli must show that Pacific Lumber "has obtained a benefit from Carli by fraud, duress, or the taking of an undue advantage." Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc., 965 F.3d 365, 379–80 (5th Cir. 2020) (quoting Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992).

Pacific Lumber has taken undue advantage of its position as Carli's distributor to enrich itself by unjustly retaining the revenue from unreported sales of Carli's merchandise. Through these unreported sales, Pacific Lumber has obtained a benefit estimated at not less than $406,000.00. Moreover, Pacific Lumber has obtained a benefit from Carli through fraud by

13

misrepresenting at least the actual dispatch freight cost related to the sales of Carli's merchandise and potentially by also misrepresenting other important values related to the transactions, including the sales price.

Additionally, if Pacific Lumber does not return the unsold merchandise to Carli, it will further be unjustly enriched in an amount equal to the fair market value of the unsold merchandise, which will be determined at trial, but not less than $3.6 million minus the applicable prepaid import and freight costs.

Therefore, Pacific Lumber has been unjustly enriched by taking undue advantage and by fraud in an amount not yet fully known, but not less than $4.025 million minus the applicable prepaid import and freight costs for the unreported sales, which represents the revenue from unreported sales of Carli's merchandise that was not remitted to Carli, the difference between the actual trucking costs and the trucking costs represented to Carli for the sales for which payment was remitted by Pacific Lumber, and the fair market value of the unsold merchandise, if this Court does not order the unsold merchandise be returned to Plaintiff.

### c) Fraud (Count IV)

Pursuant to Texas law, to prevail on a fraud claim Carli must prove: "(1) a material misrepresentation; (2) the representation was false; (3) the defendant either knew the representation was false or recklessly asserted it without knowledge of its truth; (4) the defendant intended that the plaintiff should act upon the representation; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff was injured as a result." Harris County Texas v. MERSCORP, Inc. 791 F.3s 545, 558 (5th Cir. 2015) (citing Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am., 341 S.W.3d 323, 337 (Tex. 2011)).

On at least six occasions, Pacific Lumber falsely or recklessly represented the dispatch freight cost associated with the sale of Carli's merchandise. On multiple occasions, John Hans, CFO of Pacific Lumber, acting on behalf of Pacific Lumber, submitted a false trucking invoice to Carli. Invoice nos. 12078, 12080, 12081, 12085, 12086 (all dated April 1, 2022), and 12158 (dated April 27, 2022) were allegedly issued by TDA Logistics, Inc. to Carli for trucking for sales identified by Pacific Lumber's customer reference nos. 64640, 64641, 64642, 64643, 64644, and 64861, respectively, . See Exhibits B and C to the Carli Declaration.

There is no company named TDA Logistics, Inc. registered with the Department of Transportation's Federal Motor Carrier Safety Administration ("FMCSA") as a carrier, freight forwarder, or otherwise. See Exhibit D to the Carli Declaration. Likewise, there is no business named "TDA Logistics Inc" or operating under an assumed name of "TDA Logistics Inc" registered to do business in the state of Texas nor are there any exact matches on Google for "TDA Logistics Inc." See Exhibits E and F to the Carli Declaration.

The invoices submitted to Carli misrepresented the actual cost of trucking paid by Pacific Lumber by $7,600.00. This represents markups of nearly 50%. Upon information and belief, Pacific Lumber misrepresented the dispatch freight cost for all fifteen (15) reported sales for which it received payment. Therefore, Carli estimates it has been damaged in an amount not yet fully known, but, in any event, not less than $19,000.00.

Pacific Lumber submitted the false invoices to Carli so that Carli would rely on the misrepresentations and accept payment for the completed sales of its merchandise in an amount less than it was rightfully owed without dispute. In reliance of Pacific Lumber's representation(s), Carli did not dispute the amount of payment remitted by Pacific Lumber and therefore suffered damages estimated in the amount of at least $19,000.00. Carli believes Pacific

Lumber repeatedly misrepresented the dispatch freight cost and likely misrepresented other values related to the sales of Carli's merchandise, including sales price. Therefore, Carli's damages from fraud are likely greater than presently known.

### d) Conversion (Count V)

To be successful on a claim for conversion, Carli must prove that: (1) it legally possessed the property or was entitled to it; (2) Pacific Lumber and/or the warehouse Defendants wrongfully exercised dominion and control over the property, excluding Carli; (3) Carli demanded the property's return; and (4) the Defendant(s) refused. Arthur W. Tifford, PA v. Tandem Energy Corp., 562 F.3d 699, 705 (5th Cir. 2009) (citing Small v. Small, 216 S.W.3d 872, 877 (Tex.App.—Beaumont 2007, pet. denied)).

Pursuant to the Agreement and the nature of the dealings between Carli and Pacific Lumber, Carli retains all ownership rights to the merchandise until it receives payment in full from Pacific Lumber for the sale of the merchandise. Pacific Lumber has wrongfully exercised dominion and control and continues to wrongfully exercise dominion and control over Carli's merchandise by continuing to negotiate and sell the merchandise despite Carli's demand for the unsold merchandise that remains in storage on the warehouse Defendants' premises to be returned.

The warehouse Defendants are wrongfully exercising dominion and control over the merchandise by allowing Pacific Lumber to remove it from their warehouses and/or by refusing to heed Plaintiff's instructions regarding the merchandise. The warehouse Defendants have likewise not allowed Plaintiff to retrieve its merchandise from their warehouses.

### 2. *Irreparable Injury*

To satisfy the second prong of the analysis for a temporary restraining order and preliminary injunctive relief, a plaintiff must show that it is likely to suffer irreparable harm in the absence of such relief. Janvey v. Alguire, 647 F.3d 585, 600 (5th Cir. 2011). Harm is considered irreparable when no adequate remedy at law is available. Id. Although this generally excludes the possibility of preliminary injunctive relief when monetary damages are available, "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" Id. (citing Lee v. Bickell, 282 U.S. 415, 421, 54 S.Ct. 727, 78 L.Ed. 1337 (1934) (finding injunction an appropriate remedy when multiple actions would be needed for redress at law); Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A., 875 F.2d 1174, 1179 (5th Cir. 1989) ("[An exception exists where the potential economic loss is so great as to threaten the existence of the movant's business."); Jiao v. Xu, 28 F.4th 591, 598 (5th Cir. 2022) (affirming the district court's holding that imminent threat to the existence of plaintiff's business established a substantial threat of irreparable harm in the absence of injunctive relief").

In the instant suit, monetary damages are not an adequate remedy for at least two reasons. First, since Carli and Pacific Lumber have fallen out due to Pacific Lumber's breach of contract, fraud, and conversion of Carli's merchandise, the merchandise must be returned to its rightful owner, Carli. If the merchandise remains under Pacific Lumber's control, Pacific Lumber will likely either (1) sell the merchandise at lower than market value to spite Carli or (2) leave the merchandise in storage where it will undoubtedly depreciate in value and possibly even become unsalable depending on the conditions in warehouse Defendants' facilities. Therefore, if Carli is ultimately successful in its suit and the merchandise is returned, Carli will have lost the opportunity to sell it at a price that optimizes Carli's financial return. In addition to the evident financial loss, Carli would need to initiate a second proceeding to recover damages in that case

since those damages have not yet accrued. Next, Carli is a family-owned business that cannot afford the loss it will inevitably suffer if Pacific Lumber is allowed to remain in possession, custody and/or control of the unsold merchandise stored at the warehouse Defendants' facilities or elsewhere. There is a real and substantial threat that Pacific Lumber will withhold any proceeds from the sale of the unsold merchandise. To allow Pacific Lumber to sell, move, and/or dispose of Carli's unsold merchandise while litigation is pending to resolve the issue would deprive Carli of at least $2.5 million in working capital. Such an amount is neither negligible nor insignificant to Carli. This is even more true given the current exchange rate from U.S. dollars to Brazilian reais.[2] and failure to grant preliminary injunctive relief substantially threatens to shut down Carli's operations for good.

### 3. Balance of Hardships

The balance of hardships favors granting temporary restraining order and preliminary injunction. Carli will be irreparably harmed without the temporary restraining order. On the other hand, Pacific Lumber will not be harmed in any way by the grant of the temporary restraining order because the Court can determine the money owed by Pacific Lumber to Carli for the sale of merchandise or by Carli to Pacific Lumber for the importation and freight costs.

### 4. Public Interest

The public interest will not be disserved if Plaintiff's temporary restraining order and preliminary injunction are granted. To the contrary, upholding contracts and enforcing legal remedies for their breach serves the public interest. See Daily Instruments Corp. v. Heidt, 998

---

[2] As of the latest Federal Reserve Foreign Exchange Release, dated October 3, 2022, the exchange rate on the most recent date of the release was 1 USD = 5.4008 BRL. Therefore, using this exchange rate, $2.5 million is equivalent to R$13,502,000.00. See https://www.federalreserve.gov/releases/h10/current/ (last accessed on Oct. 3, 2022).

F.Supp.2d 553, 571 (S.D. Tex, 2014) ("It is in the public interest to uphold contracts and to enforce a remedy that is provided for by Texas law.").

Furthermore, letting Carli's merchandise sit around in inventory at Defendants Cargoway's, SCM's, and OMNI's warehouses would be adverse to the public interest. Granting the requested preliminary injunctive relief would allow the merchandise currently held in Pacific Lumber's inventory at the warehouse Defendants' premises to be quickly sold and therefore ameliorate the supply shortage and potentially even lower construction prices.

## III. CONCLUSION

Based on the foregoing, Plaintiff L.F.R. Carli & Cia., Ltda. has established its need for the immediate issuance of a temporary restraining order and preliminary injunction prohibiting Defendants from continuing to benefit from their wrongful acts. Accordingly, Carli respectfully requests that this honorable Court enter a Temporary Restraining Order and then immediately set this matter for a hearing to determine the need for a preliminary injunction to prevent any further irreparable injury to Carli.

Dated: October 11, 2022

Respectfully submitted,

**LIANG + MOONEY, PLLC**
/s/ Shanshan Liang
Shanshan Liang, Esq.
Fla. Bar No. 112991
sliang@customscourt.com
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Tel: (850) 893-0670

Attorney-in-charge
*Pending pro hac vice admission*